J-A12019-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| S & R COAL COMPANY, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAUSCH CREEK LAND, L.P., | : | |
| | : | |
| Appellant | : | No. 1589 MDA 2014 |

Appeal from the Order entered August 22, 2014,
Court of Common Pleas, Schuylkill County,
Civil Division at No. S-559-2012

---

| S & R COAL COMPANY, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| RAUSCH CREEK LAND, L.P., | : | |
| | : | |
| Appellee | : | No. 1688 MDA 2014 |

Appeal from the Order entered August 22, 2014,
Court of Common Pleas, Schuylkill County,
Civil Division at No. S-559-2012

BEFORE:  BOWES, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED MAY 15, 2015**

Rausch Creek Land, L.P. ("RCL") appeals from the August 22, 2014 order entered by the Schuylkill County Court of Common Pleas (the "trial court").  Specifically, RCL appeals the trial court's determination that the phone and electrical lines for use by S & R Coal Company ("S & R") must be along the newly constructed roadway.  S & R cross-appeals from the August

22, 2014 order based upon the trial court's denial of its request for costs, expenses and attorneys' fees. After careful review, we find no error by the trial court in requiring the phone and electrical lines to be placed along the newly constructed roadway, but that it erred by denying S & R's request for costs, expenses and attorneys' fees.[1]

---

[1] On December 12, 2014, S & R filed a motion to strike certain documents included by RCL in its reproduced record filed with this Court on appeal. In particular, S & R contends it was improper for RCL to include RCL's motion for reconsideration, an application for stay of the trial court's August 22, 2014 order filed before the trial court, the notes of testimony from the October 30, 2014 proceeding regarding RCL's motion for stay, the exhibits entered at the October 30, 2014 proceeding, and an application for relief related to the stay request before this Court. According to S & R, these items were not available for the trial court's consideration prior to its August 22, 2014 decision in the matter and thus not properly considered on appeal. Rule 2152 of the Pennsylvania Rules of Appellate Procedure, which addresses the contents of the reproduced record, provides, in relevant part:

> **(a) General rule.** The reproduced record shall contain:
> (1) The relevant docket entries and any relevant related matter (see Rule 2153 (docket entries and related matter)).
> (2) Any relevant portions of the pleadings, charge or findings or (see Rule 2175(b) (order and opinions) which provides for a cross reference note only to orders and opinions reproduced as part of the brief of appellant).
> (3) Any other parts of the record to which the parties wish to direct the particular attention of the appellate court.

Pa.R.A.P. 2152(a). All of the complained-of filings are included in the certified record on appeal. Thus, pursuant to the above-quoted rule, we find no error in RCL's inclusion of these filings in its reproduced record. We therefore deny S & R's motion to strike.

The inception of this case dates back to March 15, 2012, at which time S & R filed a complaint seeking an injunction to prohibit RCL from interfering with S & R's use of an easement (a road) over RCL's property that RCL's predecessor in interest had granted to S & R's predecessor in interest. Thereafter, RCL filed a competing complaint for an injunction seeking to terminate S & R's use of the easement. Following hearings on both matters before the trial court, the parties entered a stipulation on December 6, 2012, entitled "Memorandum of Understanding with Regard to Settlement" (the "Stipulation"), providing for a new easement for S & R's use across RCL's land and for utilities – phone and electrical service – also to be located on RCL's land. The Stipulation set forth various rights and responsibilities of both parties as it related to the easements and a general description of what the completed road would look like, but contemplated that the parties would have a survey performed to determine its precise location. The Stipulation further anticipated the completion of the bulldozing and excavation of the road by December 6, 2013.

On March 6, 2014, RCL filed a document in the trial court entitled, "Petition for Rule to Show Cause Why an Easement in the Form Attached Hereto Should Not Be Executed and Recorded as Contemplated Under the Stipulation Approved and Entered as an Order of Court on December 7, 2012" ("RCL's Petition"). Therein, RCL indicated that the location of the new road was decided and agreed to by S & R but that RCL had not met the

December 6, 2013 deadline for completion of construction, detailing the efforts it had made leading up to the filing of RCL's Petition. At the time of the filing of RCL's Petition, RCL also had not entered into agreements with PP&L and Frontier (the electric and telephone companies) regarding the placement of lines for S & R's use. RCL requested that the trial court order S & R to execute the draft easement, attached to RCL's Petition as Exhibit L ("draft easement"), "or in such form as the [trial c]ourt determines to be reasonable according to the circumstances of this case." RCL's Petition, 3/6/14, ¶ 23.

S & R responded on March 21, 2014, filing an answer to RCL's Petition with new matter and counterclaim, requesting that the trial court deny RCL's Petition, order RCL to pay S & R's costs, expenses, and counsel fees associated with responding to RCL's Petition (as provided for in the Stipulation), and require RCL to comply with the Stipulation. Specifically, S & R identified the following differences between the draft easement and the Stipulation:

> 32. The documents are significantly different with respect to the grade of the roadway, in that:
>    a. The Stipulation states "the cartway shall not at any point have a grade greater than 10%." *[Stipulation] P. 3*;
> while
>    b. The easement R.C.L. seeks to impose states "to the greatest extent possible, the East/West Access Road shall not have grades of greater than ten percent (10%) that would make travel by tri-axle dump trucks or tractor and single dump trailer-

combinations unreasonably difficult." *R.C.L.'s Petition, Ex. "L", P. 4*. …

33. Another component relating to the grade of the road is also significantly different between the documents in that:

    a. The Stipulation states that "the C to F leg of the original Easement shall have no sharp turns and. shall not have a grade that is greater than five percent (5%) on any portion of the cartway erected thereon." *[Stipulation] P. 4*;

    b. The easement which R.C.L. seeks to impose contains no such equivalent provision, and instead states that "to the greatest extent possible" the grade will not exceed ten percent. *R.C.L.'s Petition, Ex. "L", P.3*;

34. The documents are also significantly different with respect to agreed-upon turning radiuses, which are critical given the nature of S & R's business, in that:

    a. The Stipulation states that "the width of the cartway turns and the easement may exceed thirty (30') feet in width as may be reasonably necessary to facilitate adequate turning radius for large trucks and heavy equipment. *[Stipulation] P. 3*;
while

    b. The easement R.C.L. seeks to impose states "the East/West Access Road shall be configured so that there are no turns of a radius that would make the East/West Access Road impassible by tri-axle dump trucks and tractor and single dump trailer combinations." *R.C.L.'s Petition, Ex. "L", P. 3-4*.

35. Another major difference with respect to the documents pertains to utilities, and the costs to be paid with respect to installation of utility, in that:

    a. The Stipulation not only grants the utility easement, but states "all costs associated with this Utility Easement and the construction of the phone and electric lines shall be borne by R.C.L." *[Stipulation] P. 2*;
while

b. The easement R.C.L. seeks to impose does not state that R.C.L. will pay for the costs associated with the construction of utilities, and further states that "S & R and R.C.L. agree that this stipulation and order described in the background section of this Agreement, above, ... shall be superseded by this Agreement..." *R.C.L.'s Petition, Ex. "L", P.11*.

36. The documents are also significantly different with respect to requirements of S & R to obtain insurance, in that:
   a. The Stipulation contains absolutely no provision whatsoever requiring S & R to maintain insurance, let alone to name R.C.L. or its affiliates as additional insureds. *See generally [Stipulation]*; while
   b. The easement R.C.L. seeks to impose extensive insurance provisions spanning almost two full pages, requiring a multitude of insurance, including workers compensation, two million dollars in comprehensive general liability, at least one million dollars in automobile liability, and which further demands S & R to name various R.C.L. entities and affiliates as additional insureds, place further insurance requirements on tenants of S & R which use the S & R property, and which also impose insurance requirements on other persons and entities which utilize the East/West access road to get to and from the S & R property, and for S & R and such persons/entities to provide insurance certifications to R.C.L. *R.C.L's Petition, Ex. "L", P. 8-10*.

37. In addition to the foregoing, yet another fundamental difference between the documents involves the maintenance obligations as to the easement route, in that:
   a. The Stipulation does not impose any ongoing maintenance obligations upon S & R, and simply requires S & R to provide crushed stone during the construction phase of the easement, to be placed upon the cartway by S & R to S & R's satisfaction. *[Stipulation] P. 3 & 4*; while

b. The proposed easement agreement imposes the additional burden upon S & R to maintain the easement;

c. In the easement (Exhibit "L") R.C.L. seeks to impose an extensive maintenance provision, requiring S & R to not only maintain the road, but to place additional crushed stone for paving, as well as perform snow removal, deicing, and all related costs and expenses necessary to keep the road in a usable-condition, with the only exception being for maintenance needed due to the use of parties other than S & R. *R.C.L's Petition, Ex. "L", P. 6*. The effect of which is to provide R.C.L with a roadway and to require that it be maintained without R.C.L. having any responsibility to maintain the roadway or to correct damage to that roadway which it causes, regardless of whether S & R uses or continues to use the roadway;

d. For a matter of clarity, this maintenance provision is especially burdensome upon S & R, as it would require S & R to not only keep the road serviceable from wear and tear from the S & R use, but also assume the risk of and abate road damage caused by others, including R.C.L.

\* \* \*

40. Other major differences between the documents at issue involve the requirements of S & R with regard to the bonded haul road:

a. The Stipulation requires that "S & R shall take no action to vacate or abandon the existing easement across the property of Timber Coal Company and commonly referred to by the parties is the bonded haul road." *[Stipulation] P.6*;

b. The equivalent provision the proposed easement imposes a duty upon S & R as follows: "at no time shall the use of the then existing location of the bonded haul road be abandoned or terminated until work on its succeeding location has been completed." *See R.C.L.'s Petition, Ex. "L", P.7*.

c. The effect of the new and added language in the proposed easement is to compel S & R to perform construction on an easement in the event

- 7 -

the other party using the easement wishes to relocate it or cause it damage. This effectively requires S & R to police the actions of others with regard to the easement, a duty which was not imposed by the Stipulation.

41. The proposed [e]asement [a]greement also differs from the Stipulation as follows:
   a. The Stipulation requires that the construction and installation of both the electric utility and telephone lines be completed before R.C.L. is able to remove the existing roadway. *[Stipulation] P.5 iii D, E;*
   b. The proposed easement does not provide for the connection of the telephone and electric easement prior to the excavation of the haul road. *R.C.L.'s Petition Ex. "L", P.10*.

42. Another major difference between these documents involves the termination of S & R's ability to use the property:
   a. The Stipulation does not contain any provision terminating S & R's right and, in fact, states that S & R shall "at all times" have access both for electric and telephone lines, as well as to its property over and across R.C.L.'s property. *[Stipulation] P.6 iii F*;
   b. The proposed easement in paragraphs 7, 15 and 16 of the proposed easement provide express language which results in the termination of S & R's easement. *R.C.L.'s Petition, Ex. "L", P.5, 10, 11*.

43. With respect to the requirement of R.C.L. to provide title insurance for the original easement to S & R the following provisions are applicable:
   a. The Stipulation provides: "Title to the easement shall be good and marketable title, and R.C.L. shall provide a title insurance policy insuring the same with a value of $500,000.00." *[Stipulation] P.3*;
   b. There is no comparable provision in the proposed [e]asement [a]greement. *R.C.L.'s Petition, Ex. "L", P.11*.

44. Another major difference between the documents at issue involves the use of the proposed easement by Russell White:

a. The Stipulation states the [S & R] shall not authorize the use of the easement by Russell White, Whitey Wash Enterprises or any of his or its employees, heirs, successors or assigns." *[Stipulation] P.6*;

b. The proposed easement expands the prohibition to any business in which Russell White or Ronald White has an interest and prohibits such parties' presence on the easement;

c. The proposed easement further provides for the forfeiture of S & R's rights under the easement in the event that any person described in the proposed easement is found to be present on the easement. *R.C.L.'s Petition, Ex. "L", P. 5, 6*;

d. This proposed provision in the easement effectively requires S & R to place a guard at the entrance of the proposed easement and to perform the background check on any and all persons who enter the easement area.

45. Another major difference between these documents at issue involves attorneys' fees for a breach of the agreements, in that:

a. The Stipulation states that "if there is a breach of this agreement by any party, the prevailing party in any litigation to enforce these provisions, shall be entitled to recover all costs, expenses and attorneys' fees incurred in such litigation." *[Stipulation] P. 3*; while

b. There is no equivalent provision on litigation costs in the easement which R.C.L. seeks to impose, but that easement does contain a provision superseding the terms of the Stipulation which would nullify the provision pertaining to attorneys' fees in the event of breach. *See generally, [Stipulation] P. 3*.

\* \* \*

49. The Stipulation does not contain any provision relating to an indemnification by either party of the other party in this proceeding. However, Exhibit "L" to [RCL's] Petition contains[,] at paragraph 13[,] a completely new provision with respect to indemnification of R.C.L. by S & R.

Counterclaim, 3/21/14, ¶¶ 32-49 (emphasis in the original).

The trial court held hearings on April 30, May 28 and June 11, 2014. Both parties presented testimony and evidence in support of their respective positions. Following its receipt and review of proposed findings of fact and conclusions of law and memoranda filed by both sides, the trial court issued an opinion and order on August 22, 2014. The trial court ordered RCL to grant PP&L and Frontier Communication an easement for the placement of utility lines along the newly constructed roadway and to pay for the cost of the electric and telephone lines; denied S & R's request for counsel fees; and approved the easement agreement drafted by S & R and submitted with its proposed order of court. The easement agreement provides as follows:

1. [RCL] does hereby grant and convey unto the [S & R], its successors and assigns, an easement over and across the property of the [RCL] for purposes of ingress, egress and regress access, and the placement of utilities, which easement shall be generally thirty (30) feet in width and shall be located as more specifically shown in red on the attached exhibit.

2. [S & R] accepts the general path of this easement as set forth on Exhibit "B" and agrees that the grade of the constructed roadway is acceptable.

- 10 -

3. The [e]asement may be expanded to greater than 30 feet wide as required by Paragraph I (D) of the [Stipulation] to accommodate large trucks and heavy equipment.

4. All other duties, obligations, requirements of the parties as set forth in the [Stipulation] are hereby affirmed, acknowledged, and incorporated herein by reference.

Easement Agreement.

On September 10, 2014, RCL filed a motion for clarification or reconsideration, requesting "an order confirming that relocating electric and phone utilities" to a location other than adjacent to the newly constructed road "would be consistent with the [trial court's] August 22, 2014 [o]rder," or for the trial court reconsider its prior decision and to enter an order permitting the same. Motion for Clarification or Reconsideration, 9/10/14, at 4. S & R filed an answer on September 16, 2014 opposing RCL's request. Also on September 16, 2014, RCL filed its own motion for reconsideration of the trial court's denial of its request for counsel fees. On September 17, 2014, the trial court entered an order denying RCL's motion for reconsideration. There is no order in the record indicating that the trial court ruled upon S & R's motion for reconsideration.

RCL filed a timely notice of appeal on September 19, 2014, and thereafter, S & R filed a timely notice of cross-appeal. Both parties complied with the trial court's orders requiring the filing of concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On September 22, 2014, RCL filed an application for stay pending the disposition of its appeal. S & R filed an answer and new matter, requesting that the trial court dismiss RCL's application for stay, or, in the alternative, if the trial court was to grant the request for stay, that the trial court require RCL to post security in the amount of $1,000,000 with the prothonotary of the trial court. The trial court held a hearing on October 14, 2014, and on October 30, 2014, the trial court entered an order staying the August 22, 2014 order pending disposition of the instant appeal, and requiring RCL to deposit with the trial court prothonotary security in the amount of $510,000 as a condition of the stay. On December 1, 2014, RCL filed a request for relief from the requirement that it post security as a condition of the stay, which this Court denied on December 12, 2014.

We begin by addressing RCL's appeal, wherein RCL presents the following issues for our review:

> A. Whether the trial court committed an error of law and abused its discretion in ordering RCL to execute and record an easement that located electric and phone utility lines along the newly constructed roadway and further directing RCL to grant PP&L and Frontier Communications an easement along said newly constructed roadway for electric and phone lines[?]
>
> B. Whether the trial court committed an error of law and abused its discretion in ignoring the provisions of the [S]tipulation and order that allow RCL to relocate electric and phone lines that service the S & R property to a location or locations other than adjacent to the newly constructed roadway[?]

RCL's Brief at 6.

We review a trial court's decision following a bench trial according to the following standard:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Agostinelli v. Edwards*, 98 A.3d 695, 704 (Pa. Super. 2014) (citation omitted).

The interrelated questions raised on appeal question the trial court's interpretation of the parties' agreement. "Since contract interpretation is a question of law, our review of the trial court's decision is de novo and our scope is plenary." *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. 2015) (citation and quotation marks omitted). The goal of contract interpretation is to "ascertain the intent of the parties." *Lenau v. Co-eXprise, Inc.*, 102 A.3d 423, 429 (Pa. Super. 2014)

> In the cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances.

*Id.* at 429-30 (internal citations omitted). Language in a contract is "ambiguous" "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* at 430. (citation omitted). Furthermore, "contractual clauses must be construed, whenever possible, in a manner that effectuates all of the clauses being considered. It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole." *Id.* (internal citations and quotation marks omitted).

With this legal predicate in mind, we address RCL's first issue raised on appeal. RCL contends that the trial court erred by requiring RCL to locate the utility lines for S & R's phone and electric service along the newly constructed roadway. RCL's Brief at 15. RCL asserts that this requirement is at odds with the language contained in the Stipulation, which permitted RCL to negotiate the location of the utility lines with the electric and phone

companies – PP&L and Frontier – without limitation. ***Id.*** at 15-16. RCL also points to a statement made by its counsel at the December 6, 2012 proceeding, whereby RCL's counsel indicated that it was the parties' intention that placement of the utility lines along the newly constructed road would only occur if RCL was unable to work out arrangements with PP&L and Frontier for the placement of the lines elsewhere on RCL's property. ***Id.*** at 17-18, 23-26. RCL further cites to testimony provided at the hearings on RCL's Petition in support of this position. ***See id.*** at 19-22.

The relevant language of the Stipulation states the following:

I. <u>General Requirements</u>.

A. RCL shall grant an easement to [S7R] over and across the portions of land owned by [RCL]. This easement will be for ingress, egress and regress access, **and phone and electrical utilities, which easement shall be 30 feet in width and shall generally follow and be part of the easement** described in Paragraph III(C) and I(D) hereof.

B. RCL shall grant PP&L and any phone company providing service to S & R and easement on the property of RCL, which easement shall be for the placement of power lines to be constructed by PP&L, and phone lines to be installed by the phone company, and RCL will cooperate and assist in obtaining approval from PP&L to place the power lines and phone lines. **The easement shall be in a form as required by PP&L and the phone company, and as is acceptable to RCL, PP&L, and the phone company**. …

\* \* \*

- 15 -

> D. **RCL shall grant an easement for ingress, egress and regress, as well as location of electric and phone utilities for business purposes thirty (30) feet in width connecting the lands of S & R to Main Street (Route 4011) generally through points A to B, B to C, and C to F**[.] …

> \* \* \*

> III. <u>Phase II</u>

> C. The easement leg from Point A to Point B, Point B to Point C, and Point C to Point F is intended to be a permanent easement by the parties and to be a permanent source of access for S & R, provided that **if RCL wishes to relocate the easement and the roadway located thereon, RCL shall relocate the roadway and easement and phone and electrical utilities**, and shall bear all costs associated with the relocation of such easement and phone and electrical utilities[.]

> \* \* \*

> F. It is the intention of the parties that S & R shall at all times have electrical and phone utility services to its property, and access over and across the property of RCL, which access, electrical and phone utility service shall be uninterrupted and generally consistent with the quality of the access and utility services existing at the time of this agreement.

Stipulation, 12/7/12, ¶¶ I(A), (B), (D), III(C), (F) (emphasis added).

The above-quoted language is clear and unambiguous. All of the provisions concerning the location of the utility lines state that they will be

located along the newly constructed road.[2]  The language of paragraph I(B) concerning the grant of a separate easement to PP&L and Frontier for the placement of utility lines on RCL's property addresses only the form, not the location, of the easement.  **See id.**, ¶ I(B).  It does not itself permit RCL to place the utility lines at any location on its property agreed to by PP&L and Frontier, as RCL suggests.  Rather, reading the relevant language of the Stipulation together, as we are required to do, the Stipulation provides for the placement of utility lines for S & R along the thirty-foot stretch of road that RCL constructed for S & R's use.

Because the language of the Stipulation is clear and unambiguous, it is improper for the trial court or this Court to look to testimony provided at any of the proceedings to determine the intention of the parties with respect to the intended location of the utility lines.  **See Lenau**, 102 A.3d at 429-30. As the trial court committed no error in its application of the law, this issue does not afford RCL relief.  **See Agostinelli**, 98 A.3d at 704.

RCL further claims error in that the trial court's order prohibits RCL from relocating the utility lines that service S & R to locations other than along the newly constructed road, as the Stipulation expressly permits RCL to do so.  Our review of the trial court's order, however, reveals no such

---

[2]  RCL does not contest the trial court's decision to enforce the terms of the stipulation as opposed to its draft easement.  It is nonetheless worth noting that in its draft easement, RCL included a provision that required the location of the utility lines to be "along the edge of the [newly constructed road.]"  RCL's Petition, 3/6/14, at Exhibit L, ¶ 3.

prohibition. To the contrary, the trial court's order requires RCL to grant PP&L and Frontier an easement for the placement of utility lines along the newly constructed road and pay for the cost of construction related thereto, and further states that terms of the Stipulation remain in effect. *See* Trial Court Order, 8/22/14; Easement Agreement. The Stipulation expressly provides for the relocation of the utilities if necessary:

> The easement leg from Point A to Point B, Point B to Point C, and Point C to Point F is intended to be a permanent easement by the parties and to be a permanent source of access for S & R, provided that if RCL wishes to relocate the easement and the roadway located thereon, RCL shall relocate the roadway and easement and phone and electrical utilities, and shall bear all costs associated with the relocation of such easement and phone and electrical utilities, including the excavation and construction of the roadway and the stone necessary for its construction shall be paid solely by RCL, and the relocation of such easement and roadway and phone and electric utilities shall be performed and completed prior to the removal of the roadway as currently provided for herein. It is not intended at this time that RCL will require the relocation of the roadway and the easement at any time in the reasonably foreseeable future (10-20 years); however, RCL may, because of its mining plans or other development plans for its lands, relocate the easement for the roadway providing access to Route 4011 for S & R and phone and electric utilities, provided the new easement has good and marketable title and the construction of the roadway and electric and phone utilities is substantially in conformity with the elevations, grades and widths and condition of the roadway and electric and phone utility service as existed at the time of the requested relocation. The parties agree at the time of any relocation to execute and record all commercially

reasonable documents necessary to relocate the easement phone and electric utilities and terminate the rights as to their prior location.

Stipulation, 12/7/12, ¶ III(C).

The trial court's order did nothing to alter this provision in the Stipulation. As such, RCL's contrary claim is entirely without merit.

We now turn to S & R's cross-appeal, wherein S & R raises the following issues for our review:

A. Whether the [t]rial [c]ourt committed an error of law in failing to find that RCL had breached the Stipulation and [o]rder of [c]ourt of December 6, 2012 by failing to enforce the provisions of that document which enable the prevailing party, here S & R, to recover all costs, expenses and attorneys['] fees incurred in litigating matters pursuant to that Stipulation and [o]rder which the [t]rial [c]ourt found to be a contract between the parties[?]

B. Whether the [t]rial [c]ourt committed an abuse of discretion when it failed to find that RCL breached the Stipulation and [o]rder which constituted a contract between the parties and that S & R, as the prevailing party in the matter before the [t]rial [c]ourt, was entitled to recover its costs, expenses and attorneys['] fees incurred in this litigation from RCL[?]

C. Whether the [t]rial [c]ourt committed an error of law in failing to find that RCL's actions in repudiating the Stipulation or [o]rder constituted a breach of the Stipulation and [o]rder when that factual conclusion is supported by both the record evidence in this matter and the factual findings of the [t]rial [c]ourt[?]

S & R's Brief at 4-5 (citations to the reproduced record omitted).

- 19 -

S & R asserts that by filing RCL's Petition and the draft easement, RCL committed an anticipatory breach of the Stipulation, as the terms of the draft easement were vastly different and, in some circumstances, contradictory to the terms of the Stipulation. *Id.* at 23-26. In its claim for attorney's fees, S & R relies upon the final paragraph of the Stipulation, which states: "If there is a breach of this agreement by any party, the prevailing party in any litigation to enforce these provisions[] shall be entitled to recover all costs, expenses, and attorneys['] fees incurred in such litigation." Stipulation, 12/7/12, ¶ IV.

The trial court found that the draft easement filed by RCL included terms not called for in the Stipulation, and that it attempted to make "significant changes" to the terms of the agreement. Trial Court Opinion, 8/22/14, at 9. The trial court stated that the draft easement was RCL's attempt to "renegotiat[e]" the Stipulation because "RCL was not satisfied with the deal it had made," attempting to "place[] additional requirements on S & R and fewer obligations on RCL." *Id.* at 10. The trial court further found "that the Stipulation was to be the final settlement agreement and must be abided by except where the change is by mutual agreement of the parties under [p]aragraph III G of the Stipulation[3] which allows further

---

[3] Paragraph III(G) of the Stipulation states: "The parties agree to execute such further documents and take such further actions as are necessary or convenient to the implementation of this [Stipulation], and the recording of the easements described herein." Stipulation, 12/7/12, ¶ III(G).

action to implement the [Stipulation] as opposed to the execution of a new agreement that has fundamental differences." *Id.* (footnote added). Nonetheless, the trial court determined that the underlying proceedings were "not the result of a breach of the Stipulation, but involve[d] a modification of the original [Stipulation]," and that S & R therefore was not entitled to counsel fees. *Id.* at 11.

"[T]o constitute anticipatory breach under Pennsylvania law there must be "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *2401 Pennsylvania Ave. Corp. v. Fed'n of Jewish Agencies of Greater Philadelphia*, 489 A.2d 733, 736 (Pa. 1985) (quoting *McClelland v. New Amsterdam Casualty Co.*, 185 A. 198 (Pa. 1936) (Per Curiam)). Our Supreme Court has "adamantly [] reinforced the clear predicates of repudiation … reject[ing] any argument suggesting a dilution of our long recognized standard of an 'absolute and unequivocal refusal to perform.'" *Harrison v. Cabot Oil & Gas Corp.*, 110, A.3d 178, 185 (Pa. 2015) (citing *2401 Pennsylvania Ave. Corp.*, 489 A.2d at 737).

As stated above, the draft easement attached to RCL's petition included language and obligations not contemplated or included in the Stipulation. The record supports the trial court's finding that these differences were significant, placing additional burdens on S & R and alleviating many of those originally placed upon RCL and bestowing upon

RCL additional benefits not originally contemplated or provided for in the Stipulation. *See supra*, pp. 4-10. We observe that as of June 11, 2014, the final day of litigation in this matter, RCL had completed the construction of the road, at which time the grading and width of the road was in large part in conformity with the Stipulation. *See* N.T., 6/11/14, at 44 (S & R's corporate representative testifying that, with the exception of "one bad turn," he had no complaints about the road). However, RCL continued to make demands for the inclusion of terms not called for in the Stipulation, attempting to alter the terms of the agreement. Specifically, in the easement agreement RCL attached to its proposed findings of fact and conclusions of law, RCL included terms that differed substantially from the Stipulation, including:

- Changing in the location of the placement of the utility lines;

- adding additional prohibitions as to who may use the easement;

- providing for RCL's entitlement to costs, expenses and attorneys' fees if prohibited persons are found to be using the newly constructed road fourteen days after S & R is notified of the prohibited persons' use;

- imposing additional maintenance requirements for S & R related to the newly constructed road;

- requiring only RCL's prior written approval to relocate the easement;

- including extensive indemnity and insurance requirements;

- prohibiting the use by anyone of the newly constructed road without first providing proof of insurance to RCL;

- permitting the recovery of costs, expenses and attorneys' fees not just for breach of the agreement, but in any action to enforce the easement agreement; and

- the easement agreement would supersede the Stipulation.

*See* Proposed Findings of Fact, Conclusions of Law, and Argument in Support of the March 6, 2014 Petition of [RCL], 7/17/14, at Exhibit A, ¶¶ 2-4, 7, 9-11, 13, 18.

As stated above, the trial court found that the parties intended "that the Stipulation was to be the final settlement agreement." Trial Court Opinion, 8/22/14, at 10. Through its actions, RCL has demonstrated a clear and unequivocal refusal to perform pursuant to the final settlement agreement, and therefore, has anticipatorily breached the Stipulation. *See 2401 Pennsylvania Ave Corp.*, 489 A.2d at 736. We therefore reverse the trial court's denial of S & R's request for costs, expenses and attorneys' fees as provided for by the Stipulation.

In summary, we agree with the trial court's interpretation of the Stipulation and find no error in its order requiring placement of the utility lines along the newly constructed road. We reverse the trial court's denial of counsel fees to S & R, as RCL anticipatorily breached the Stipulation and S & R was the prevailing party in the litigation, entitling S & R to costs, expenses and attorneys' fees pursuant to the Stipulation.

Order affirmed in part and reversed in part.  Case remanded.  Motion to Strike denied.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2015